IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

SANDRA COPELAND,                              )

    PLAINTIFF,                             )

VS.                                           )            2:14-cv-1523-JHH

BIRMINGHAM NURSING AND                        )
REHABILITATION CENTER
EAST, LLC; and AURORA CARE,                   )
LLC d/b/a TARA CARES,
                                              )
    DEFENDANTS.

MEMORANDUM OPINION

The court has before it the May 21, 2015 Motion (Doc. #21) for Summary Judgment filed by Defendants Birmingham Nursing and Rehabilitation Center East, LLC and Aurora Care, LLC d/b/a Tara Cares. Defendants simultaneously filed a brief (Doc. #33) and evidence (Doc. # 23) in support of their Motion. Pursuant to the court's May 26, 2015 order (Doc. #24), on June 16, 2015, Plaintiff filed a response (Doc. #25) in opposition to the Motion and on June 23, 2015, Defendants filed a reply (Doc. #26.) After consideration of the record and arguments before the court, the court concludes that the doctrine of judicial estoppel applies to the claims in this case and that the Motion is due to be granted in full for the following reasons.

**I. Relevant Undisputed Facts**

On August 11, 2009, Plaintiff Sandra Copeland and her husband filed Chapter 13 bankruptcy as co-debtors. (Def. Exh. B.) On November 30, 2009, the bankruptcy court confirmed the bankruptcy plan. (Pl. Exh. D.) All payments made by Copeland and her husband under the plan were made by way of garnishment from her husband's paycheck. (Copeland Decl. ¶ 2.)

In January 2012, while she was still in bankruptcy, Copeland was hired by Birmingham Nursing and Rehabilitation Center East ("Birmingham East"). On June 13, 2013, Copeland was terminated. (Compl. ¶¶ 16, 36-37.) On August 2, 2013, Plaintiff completed a Charge of Discrimination with the EEOC alleging that Birmingham East and Aurora Cares, LLC d/b/a Tara Cares ("Tara Cares") discriminated against her on the basis of her actual or perceived and/or record of disability. (Compl. ¶ 2; Def.'s Exh. A.) Her attorney sent the signed Charge to the EEOC on August 5, 2015. (Def.'s Exh. A.)

At the time Plaintiff filed her EEOC charge, she was in Chapter 13 bankruptcy. (*See* Def. Exh. B.) Plaintiff did not amend her bankruptcy schedules to reflect the claims she asserted in her EEOC charge. (*Id.*) Plaintiff's bankruptcy was discharged[1]

---

[1] Copeland and her husband fully repaid all creditors with applicable interest. (Ferguson Decl.; Pl. Exh. C.)

2

on December 5, 2013, while her EEOC charge was still pending. (*Id.*) The EEOC issued Copeland a Right to Sue letter on May 6, 2014. (Pl. Exh. H.)

On August 8, 2014, Plaintiff filed the instant Complaint in this court alleging that Birmingham East and Tara Cares discriminated against her on the basis of her actual or perceived disability and/or record of a disability in violation of the ADA. (*See* Compl.) On September 2, 2014, Defendants filed separate Answers to the Complaint. (*See* Docs. # 6 & 7.) The court entered a scheduling order on November 5, 2014 (Doc. # 12), and on December 23, 2014, Birmingham East served Plaintiff's counsel with discovery requests. (*See* Def. Exh. C.) One of the interrogatories asked as follows: "Has Plaintiff ever declared bankruptcy? If so, what chapter and in what court? Has the bankruptcy been discharged?" (Def. Exh. C.) Plaintiff's responses were due on January 26, 2015, but Plaintiff did not provide substantive responses by that date, and instead only providing objections and promising further responses "by the end of the week," or January 30, 2015. (*See* Def. Exh. D.)

In the following months, Plaintiff's counsel continued to promise interrogatory responses, but failed to provide them and did not offer any explanation for the delay. (*Id.*) On April 17, 2015,[2] Birmingham East filed a motion to compel response to the interrogatories, and the court granted the motion a few days later. (*See* Docs. # 17 &

---

[2] The interrogatory responses were eighty-one days past due.

18.) On April 29, 2015, Plaintiff provided the interrogatory responses, and stated that she had filed for Chapter 13 bankruptcy in the Northern District of Alabama "and reopened the case in April of this year." (Def. Exh. E.)

During the month of May, counsel for the parties attempted to coordinate deposition dates for the Plaintiff and four non-party witnesses. (*See* Def. Exh. F.) Recognizing a scheduling issue with regard to the depositions, counsel for Defendants suggested that the parties seek an extension of discovery, and Plaintiff's counsel agreed. (*Id.*) Counsel for Defendants drafted a motion and sent it to counsel for Plaintiff for review on May 19, 2015. (*Id.*) In response to the draft motion, counsel for Plaintiff explained for the first time that the delay in providing interrogatory responses was due to Plaintiff's bankruptcy because counsel for Plaintiff deemed it necessary to re-open the bankruptcy to amend Plaintiff's schedules to reflect Plaintiff's employment discrimination claim.[3] (*Id.*)

## II. Summary Judgment Standard

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together

---

[3] According to the e-mail, counsel for Plaintiff "told her to tell her bankruptcy lawyer to amend her schedules to add the claim" when the case was in the EEOC. (Def. Exh. F) The amendment never happened. (*Id.*) When Plaintiff's counsel discovered that the amendment was never made, he told Plaintiff that "it would most likely be a waste of time to pursue the case further unless a motion to reopen bankruptcy was filed and granted and the claim added." (*Id.*)

with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000). The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact. *See id.* at 323. Once the moving party has met its burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and by its own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial. See id. at 324.

The substantive law will identify which facts are material and which are irrelevant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *See id.* at 249.

The method used by the party moving for summary judgment to discharge its initial burden depends on whether that party bears the burden of proof on the issue at trial.  *See Fitzpatrick*, 2 F.3d at 1115-17 (citing *United States v. Four Parcels of Real Property*, 941 F.2d 1428 (11th Cir. 1991)(*en banc*)).  If the moving party bears the burden of proof at trial, then it can only meet its initial burden on summary judgment by coming forward with positive evidence demonstrating the absence of a genuine issue of material fact; i.e. facts that would entitle it to a directed verdict if not controverted at trial.  *See Fitzpatrick*, 2 F.3d at 1115.  Once the moving party makes such a showing, the burden shifts to the non-moving party to produce significant, probative evidence demonstrating a genuine issue for trial.

If the moving party does not bear the burden of proof at trial, it can satisfy its initial burden on summary judgment in either of two ways.  First, the moving party may produce affirmative evidence negating a material fact, thus demonstrating that the non-moving party will be unable to prove its case at trial.  Once the moving party satisfies its burden using this method, the non-moving party must respond with positive evidence sufficient to resist a motion for directed verdict at trial.

The second method by which the moving party who does not bear the burden of proof at trial can satisfy its initial burden on summary judgment is to <u>affirmatively</u> show the absence of evidence in the record to support a judgment for the non-moving

6

party on the issue in question. This method requires more than a simple statement that the non-moving party cannot meet its burden at trial but does not require evidence negating the non-movant's claim; it simply requires the movant to point out to the district court that there is an absence of evidence to support the non-moving party's case. *See Fitzpatrick*, 2 F.3d at 1115-16. If the movant meets its initial burden by using this second method, the non-moving party may either point out to the court record evidence, overlooked or ignored by the movant, sufficient to withstand a directed verdict, or the non-moving party may come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency. However, when responding, the non-movant can no longer rest on mere allegations, but must set forth evidence of specific facts. *See Lewis v. Casey*, 518 U.S. 343, 358 (1996) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)).

### III. Discussion

Judicial estoppel is an equitable doctrine that precludes a party from "asserting a claim in a legal proceeding that is inconsistent with a claim taken by that party in a previous proceeding." *Barger v. City of Cartersville, Ga.*, 348 F.3d 1289, 1293 (11th Cir. 2003) (quoting *Burnes v. Pemco Aeroplex, Inc.*, 291 F.3d 1282, 1284 (11th Cir. 2002)). The doctrine exists "to protect the integrity of the judicial process by

prohibiting parties from deliberately changing positions according to the exigencies of the moment." *Id.* For this reason, parties asserting judicial estoppel need not demonstrate individual prejudice. *Id.* at 1286.

The Supreme Court has enumerated three non-exclusive considerations that may inform a court's decision of whether to apply judicial estoppel: (1) whether the present position is "clearly inconsistent" with the earlier position; (2) whether another tribunal accepted the earlier position; and (3) whether the party advancing the inconsistent position would derive an unfair advantage. *Id.* at 1285. The Eleventh Circuit has added two other considerations to the list: (1) whether "the allegedly inconsistent positions were made under oath in a prior proceeding"; and (2) whether the inconsistencies were "calculated to make a mockery of the judicial system." *Id.* These two factors are not "inflexible or exhaustive; rather, courts must always give due consideration to all of the circumstances of a particular case." *Id.* at 1286.

Defendants argue that Plaintiff is judicially estopped from bringing the claims asserted in her Complaint because she failed to disclose her claims to the Bankruptcy court while her Chapter 13 case as ongoing. Plaintiff counters that (1) she did not have a duty to disclose her claim because her discrimination claim was not part of her bankruptcy estate and (2) even if she did have a duty to disclose, there is no evidence that Plaintiff attempted to make a mockery of the judicial system. The court address

8

each argument below.

## A. Inconsistent Positions Under Oath

When applying the first factor, the Eleventh Circuit has held that failure to disclose a claim in bankruptcy constitutes an inconsistent position taken under oath if the debtor later pursues that claim. *See Burnes*, 291 F.3d at 1286.; *see also Ajaka v. Brooksamerica Mortg. Corp.*, 453 F.3d 1339, 1344 (11th Cir. 2006). The Eleventh Circuit explained this holding as follows:

> A debtor seeking shelter under the bankruptcy laws must disclose all assets, or potential assets, to the bankruptcy court. The duty to disclose is a continuing one that does not end once the forms are submitted to the bankruptcy court; rather, a debtor must amend his financial statements if circumstances change. Full and honest disclosure in a bankruptcy case is crucial to the effective functioning of the federal bankruptcy system.

*Burnes*, 291 F.3d at 1286 (quotations and citations omitted).

Here, Plaintiff took inconsistent positions under oath only if she had a continuing duty to disclose changes in her asset schedule. *Robinson v. Tyson Foods, Inc.*, 595 F.3d 1269, 1274 (11th Cir. 2010). Plaintiff contends that she did not have a duty to disclose her discrimination claim because it was never part of her bankruptcy estate as it arose post-confirmation and there was not allegation or showing by Defendants that it was needed to meet her bankruptcy plan. (Doc. # 27

at 7-12. The court disagrees.

Plaintiff contends that *Muse v. Accord Human Resources, Inc.*, 129 Fed. App'x 487 (11th Cir. 2005) controls the outcome of this case. In *Muse*, the debtor filed a Chapter 13 petition in November 1997 and his plan was confirmed in April 1998. *Id.* After confirmation, the debtor filed suit under the FLSA to recover unpaid overtime wages incurred between January 2000 and September 2002. *Id.* at 487–88. As such, the debtor's wage claim arose both post-petition and post-confirmation. The district court entered summary judgment in favor of the defendant finding that the debtor was judicially estopped from asserting the wage claim because he had failed to amend and list it in his bankruptcy schedules . *Id.* at 488. The Eleventh Circuit reversed. *Id.* at 490. Based on its analysis of *Telfair v. First Union Mortg. Corp.*, 316 F.3d 1333 (11th Cir. 2000), the Eleventh Circuit held that because the debtor's unpaid wage claim accrued post-confirmation and "there [was] no assertion that it was necessary for the plan," the wage claim was not property of the debtor's estate, he had no duty to disclose it, and he was not judicially estopped from bringing an action to recover damages. *Id.* at 488–90.

Three years later, however, in *In Re Waldron*, 536 F.3d 1239 (11th Cir. 2008), the Eleventh Circuit distinguished *Telfair* as addressing only that property of which the debtor is aware at the time of petition and not "new assets" that a debtor acquires

after confirmation. *See id.* at 1241–43. *Waldron* explicitly rejected the debtor's argument that all assets acquired post-confirmation automatically vest in the debtor. *Id.* at 1242. Instead, the Eleventh Circuit stated that the bankruptcy court "is entitled to learn about a substantial asset that the court had not considered when it confirmed the debtors' plan." *Id.* at 1245.

*Waldron* held that a debtor's claims for legal relief of all types that arise after the confirmation of a Chapter 13 plan but before the completion of the plan are property of the bankruptcy estate. *Id.* at 1241–43, 1245; *see also Robinson*, 595 F.3d at 1274 ("It is undisputed that a pending lawsuit seeking monetary compensation qualifies as an asset. It is also undisputed that such an asset qualifies as property of the bankruptcy estate.") (internal citations omitted). The Court found that the bankruptcy court did not abuse its discretion when it required the plaintiffs to amend their schedule of assets to disclose the settlement of a claim for uninsured motorist benefits that arose after confirmation. *Waldron*, 536 F.3d at 1244. In doing so, the Court reaffirmed Eleventh Circuit precedent "recognizing a debtor's continuing duty to disclose changes in his financial situation during the pendency of his bankruptcy." *Id.* (citing *Burnes*, 291 F.3d at 1286).

Although Plaintiff is correct that *Muse* is factually similar to the instant case,

11

the court discredits *Muse* in light of *Waldron*.⁴ This is especially true in light that *Muse*, unlike *Waldron*, is unpublished and therefore not controlling authority. *See Bonilla v. Baker Concrete Const., Inc.*, 487 F.3d 1340, 1345 n.7 (11th Cir. 2007). Other courts in this circuit have similarly discredited *Muse* and required a debtor to disclose a post-confirmation clam. *See, e.g., Robinson*, 595 F.3d 1260 (11th Cir. 2010); *Brown v. Winn-Dixie Stores, Inc.*, 2015 WL 3448614 (S.D. Ga. May 20, 2015); *Smith v. Werner Enters., Inc.*, 2014 WL 6977889 (S.D. Ala. Nov. 21, 2014).

Here, Plaintiff made a statement under oath in her Chapter 13 proceeding that is inconsistent with her statements in this lawsuit. She had a continuing statutory duty to amend her schedule of assets in her bankruptcy proceeding to reflect her potential employment discrimination claim against Defendants. *See Robinson*, 595 F.3d at 1274; *Burnes*, 291 F.3d at 1286. By failing to disclose her claim, she effectively represented to the bankruptcy court that she had no legal claims and then later pursued her undisclosed claims against Defendants. *See Robinson*, 595 F.3d at 1275. Both of these actions were taken under oath and are "clearly inconsistent."⁵

---

⁴ The court rejects Plaintiff's attempts to distinguish *Waldron* and *Robinson*.

⁵ The court takes note of other inconsistent statements between the bankruptcy court and this one, albeit recognizing that they were not made under oath. Those statements include the following:

(1) her motion to reopen bankruptcy filed on April 2, 2015 where she argued that her discrimination claim was an asset of the bankruptcy estate;

*Id.*

## B. Mockery of the Judicial System

Because the court concludes that Plaintiff took inconsistent positions under oath, the applicability of judicial estoppel hinges on the second factor - whether Plaintiff intentionally misled the bankruptcy court. "[T]he doctrine of judicial estoppel applies in situations involving intentional contradictions, not simple error or inadvertence." *Burnes*, 291 F.3d at 1286. The Eleventh Circuit has often held that deliberate or intentional manipulation of the judicial system can be inferred from the record. *Id.* at 1287; *Robinson*, 595 F.3d at 1275. A "debtor's failure to satisfy its statutory disclosure duty is 'inadvertent' only when, in general, the debtor either lacks knowledge of the undisclosed claims or has no motive for their concealment." *Burnes*, 291 F.3d at 1287 (quoting *In re Coastal Plains, Inc.*, 179 F.3d 197, 205 (5th Cir. 1999)). The requisite intent can be inferred if the debtor "both knew about the undisclosed claims and had a motive to conceal them from the bankruptcy court." *De Leon*, 321 F.3d at 1291; *accord Robinson*, 595 F.3d at 1275; *Barger,* 348 F.3d at

---

(2) statement in the motion to reopen bankruptcy that her attorney recently learned of her bankruptcy case, but that same attorney represented to counsel for defendants that he advised Plaintiff to amend her bankruptcy schedule when the case was in the EEOC, which was over a year and a half earlier.

The court is also mindful that Plaintiff made no attempt to reopen her bankruptcy until April 2, 2015, six months after the lawsuit was filed and only after counsel for Defendants asked in discovery whether Plaintiff had filed bankruptcy.

1295. Where knowledge and motive are present, "intent may be properly inferred from a relatively sparse record." *Bennett v. Flagstar Bank*, No. 2:10–cv–181, 2011 WL 6152940, at *4 (S.D.Ga. Dec.8, 2011) (citing *Robinson*, 595 F.3d at 1275). Motive stems from the unfair advantage a litigant obtains "from the possibility of defrauding the courts and not from any actual fraudulent result." *Robinson*, 595 F.3d at 1275.

### 1. Knowledge

It is undisputed that Plaintiff had knowledge of her discrimination claim while her bankruptcy case was pending. Plaintiff filed her EEOC charge, with the help of her attorney, on August 5, 2013.[6] (Def. Exh. A.) Plaintiff's bankruptcy was discharged on December 5, 2013, while her EEOC charge was still pending. (Def. Exh. B.)

### 2. Motive

"[A] financial motive to secret assets exists under Chapter 13 . . . because the hiding of assets affects the amount to be discounted and repaid." *De Leon*, 321 F.3d at 1291; *see also Burnes*, 291 F.3d at 1288 (finding that Chapter 13 debtor "stood to gain an advantage" by concealing his employment discrimination claims because it

---

[6] EEOC charge are considered legal claims that, if it arises post-confirmation, must be disclosed to the bankruptcy court. *See Waldron*, 536 F.3d at 1242; *Casanova v. Pre Solutions, Inc.*, 228 F. App'x 837, 841 (11th Cir. 2007).

was "unlikely he would have received the benefit of a conversion to Chapter 7 followed by a no asset, complete discharge had his creditors, the trustee, or the bankruptcy court known of a lawsuit claiming millions of dollars in damages"); *Barger*, 348 F.3d at 1296 ("Omitting the discrimination claims from the schedule of assets appeared to benefit [the Chapter 7 debtor] because, by omitting the claims, she could keep any proceeds for herself and not have them become part of the bankruptcy estate.").

Plaintiff contends that she did not have a financial motivation to hide her claim because she paid her creditors in full via garnishment of her husband's wages. While this statement might be true with the benefit of hindsight,[7] at the time Plaintiff filed her EEOC charge, she had not yet completed her payments to the bankruptcy court, nor was there any guarantee to her creditors that she would do so. Plaintiff's creditors had a right to know of any change to her disclosed assets to determine whether to move to amend the plan. *See Waldron*, 546 F.3d at 1245.

In rejecting the full repayment argument, the Eleventh Circuit explained that motive stems from the unfair advantage a litigant obtains "from the possibility of defrauding the courts and not from any actual fraudulent result." *Robinson*, 595 F.3d

---

[7] The relevant inquiry is the debtor's intent at the time of non-disclosure. *Burnes*, 291 F.3d at 1288.

at 1275 (emphasis added). "[F]ull monetary repayment does not necessarily preclude a finding of motive to conceal. The application of judicial estoppel does not require that the nondisclosure must lead to a different result in the bankruptcy proceeding." *Id.*

Plaintiff's attempt to blame her bankruptcy attorney (*see* doc. # 27 at 12-13) similarly fails. The fact that Plaintiff informed her counsel of the potential claims in this case and that counsel allegedly de-valued those claims and failed to amend the bankruptcy schedule is no defense against the application of judicial estoppel.[8] The Eleventh Circuit has determined that attorney omission "is no panacea." *Barger v. City of Cartersville, Ga.*, 348 F.3d 1289, 1295 (11th Cir. 2003). "There is certainly no merit to the contention that dismissal of petitioner's claim because of his counsels' unexcused conduct imposes an unjust penalty on the client. Petitioner voluntarily chose an attorney as his representation in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent." *Barger*, 348 F.3d at 1295 (quoting *Link v. Wabash R.R. Co.*, 370 U.S. 626, 633-34 (1962)). "[K]eeping this suit alive merely because plaintiff should not be penalized for the omissions of his own attorney would be visiting the sins of the plaintiff's lawyer upon

---

[8] The cases cited by Plaintiff in an attempt to blame her attorney are distinguishable for the reasons explained by Defendants in their reply brief. (*See* Doc. # 28 at 7-8.)

the defendant." *Id.* at 634 n.10. Instead, "[i]f an attorney's conduct falls substantially below what is reasonable under the circumstances, the client's remedy is against the attorney in a suit for malpractice." *Id.*

In summary, the court finds that Plaintiff's claims[9] are barred by the doctrine of judicial estoppel. The record before the court establishes that Plaintiff made inconsistent statements under oath and her actions made a mockery of the judicial system. *See Burnes*, 291 F.3d at 1285.

## III. Conclusion

For the reasons explained above, the Motion (Doc. # 21) for Summary Judgment is due to be granted in full. A separate order will be entered.[10]

**DONE** this the   1st   day of July 2015.

*[signature: James H. Hancock]*
SENIOR UNITED STATES DISTRICT JUDGE

---

[9] The court rejects Plaintiff's contention that her claims for injunctive relief survive. While it is true that the doctrine of judicial estoppel does not prohibit a Plaintiff from pursuing claims which add no monetary value to the bankruptcy estate, *see Burnes*, 291 F.3d at 1289, Plaintiff's claims for injunctive relief here are not feasible. Other than an order prohibiting Defendants from violating the ADA (something that by law they are required to do anyway), the only injunctive relief sought by Plaintiff is reinstatement. (*See* Compl.) Plaintiff, however, has surrendered her nursing license (Exh. A to Doc. #28), thus making reinstatement to her previous position impossible.

[10] As a result of this opinion, Plaintiff's June 16, 2015 Motion (Doc. # 25) to Supplement is **DENIED**.